# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1109V
Filed: February 22, 2022

* * * * * * * * * * * * * * * * * * * * * * * *
|  |  |  |
|---|---|---|
| STACY SMITH, | * | |
| | * | |
| Petitioner, | * | Findings of Fact; Onset; SIRVA |
| v. | * | (Not to be Published) |
| | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

*David Carney*, Green & Schafle, LLC, Philadelphia, PA, for Petitioner
*Austin Egan*, U.S. Department of Justice, Washington, DC, for Respondent

## RULING ON ONSET[1]

**Oler**, Special Master:

On July 30, 2019, Stacy Smith ("Ms. Smith" or "Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). The petition alleges that the Petitioner developed a shoulder injury related to vaccine administration ("SIRVA") as a result of the flu vaccine she received on October 2, 2018. Pet. at 1, ECF No. 1.

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I intend to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** However, the parties may object to the Ruling's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

After carefully considering the evidence presented in this case, to include the medical records, and affidavits, I find that Petitioner's right shoulder pain began on the day of her vaccination.

## I.     Procedural History

Petitioner filed her petition on July 30, 2019. Pet., ECF No. 1. Ms. Smith filed supporting medical records and an affidavit on August 8, 2019. Exs. 1-6. She filed a supplemental affidavit on November 12, 2019 (Ex. 7) and additional medical records on September 4, 2020 (Ex. 8) and November 17, 2020 (Exs. 9-14).

Respondent filed his Rule 4(c) Report on January 12, 2021. Resp't's Rep.; ECF No. 20. Respondent argued that this case is not appropriate for compensation because the medical records do not reflect that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination. Resp't's Rep. at 7. Petitioner filed witness affidavits on May 11, 2021. Exs. 16, 17, 18; ECF No. 23. This case was then assigned to my docket on June 16, 2021. ECF No. 26.

I held a status conference on June 22, 2021 where I asked counsel whether a Rule 5 Order would help move the case forward. *See* Scheduling Order dated June 23, 2021; ECF No. 27. Mr. Carney agreed that it would. Counsel for Respondent requested two weeks to confer with her client and file a status reporting answering that question. *Id.* at 1. On July 14, 2021, the parties filed a joint status report indicating that a Rule 5 would be a helpful next step. ECF No. 29.

I conducted a Rule 5 conference on August 5, 2021. *See* Rule 5 Order dated August 5, 2021; ECF No. 32. During the Rule 5, I tentatively found that Petitioner experienced right shoulder pain that began on the day of her October 2, 2018 flu vaccination. *Id.* at 5.

On October 18, 2021, Respondent stated he was willing to engage in settlement negotiations. ECF No. 34. On December 17, 2021, the parties filed a joint status report indicating that they were unable to resolve the case informally and asked that the case continue on a litigation track. ECF. No. 35.

I referred this matter to ADR on January 5, 2022. ECF No. 36. Although the case remains in ADR, I held a status conference with the parties after they filed a joint status report asking that they be permitted to pursue ADR and continue to litigate entitlement. ECF No. 37. During the status conference, I asked whether it would help the ADR process if I were to issue a ruling on onset. *See* Scheduling Order dated February 17, 2022. ECF No. 38. Counsel for both sides indicated that it would. *Id.* This case is now ripe for a determination on onset.

## II.    Petitioner's Medical Records that Pertain to the Issue of Onset

On June 22, 2018, Petitioner presented to her chiropractor at the Kirchner clinic with "a chief complaint of right cervical dorsal, and right posterior shoulder discomfort. The discomfort was caused by overexertion while moving boxes for a yard sale at home on 6/8/2018. The onset

and quality of discomfort are described as gradual and aching and sharp." Ex. 4 at 6. Ms. Kirchner noted that "Joint dysfunction was found bilaterally at the T1 sternocostal junction." *Id.*

Petitioner received an influenza vaccine in her right deltoid on October 2, 2018. Ex. 1 at 4.

On October 31, 2018, Petitioner presented to Blessing Physician Services for refills on Adipex. Ex. 3 at 20. Petitioner stated that "she is here to restart her Adipex an[d] that she would like to have an Rx for diazepam…. No other problems or concerns at today's visit." *Id.*

On November 13, 2018, Petitioner presented to Blessing Physician Services for earache, sore throat, and cough. Ex. 3 at 17. She did not mention shoulder pain at this visit, and from the records, it appears that no examination of the arm or shoulder occurred. *Id.*

On December 12, 2018, Petitioner presented to Blessing Physician Services for complaints of bleeding and arm soreness. Ex. 3 at 14. Brigitte Cormier, DO, noted that Petitioner "states she got her flu shot on 10/2 and her arm is still sore. States it is not red or swollen but still painful to move." *Id.* The History of Present Illness (HPI) section of the record indicates that "Pt. is having shoulder/arm pain in the area that she got her flu shot in October and would like to have it checked." *Id.*

On December 12, 2018, Petitioner also presented to the Kirchner Clinic. Ex. 4 at 4. According to the chiropractor's notes, Petitioner presented "after a fall painting cabinets at home on December 2, 2018. She was standing on a lower cabinet and fell backwards. She caught herself with her right arm, wrenching it. Her chief complaint is right upper arm and shoulder pain, even at rest. She is unable to lift anything at the moment and says that the pain occasionally radiates down to her fingers." *Id.* Ms. Kirchner noted that "palpitation reveals areas of spasm, hypomobility and end point tenderness indicative of subluxation at right L2, T12, right C6 and left C5." *Id.*

On December 18, 2018, Petitioner presented to the Kirchner Clinic for "follow up from her cabinet fall." Ex. 4 at 3. Chiropractor Kelley Kirchner wrote that Petitioner's "lower back pain has improved, but her shoulder pain has worsened. It throbs at times." *Id.* Ms. Kirchner's assessment was that Petitioner's "condition has worsened since the last treatment. Her bursa is now inflamed and she is having pain in most ranges of motion now." *Id.*

On February 12, 2019, Petitioner presented to Blessing Physician Services with "continued shoulder pain from when she had her flu shot done at the CCHD." Ex. 3 at 11.

On April 6, 2019, Petitioner was seen for an X-ray of the right shoulder. Ex. 5 at 31. In the history section of the notes, it states that Petitioner was there for "right lateral shoulder pain; pain since October 2018." Ex. 5 at 31. The impression was "No visualized fracture or definite significant osseous findings." *Id.*

On September 3, 2019, Petitioner filled out an intake form at Weber Chiropractic. Ex. 12 at 6. In a patient-provided history, Petitioner noted pain in her right shoulder which she stated began "after flu shot – last October." *Id.* at 8.

On December 11, 2019, Petitioner was seen at the Kirchner Clinic. Ex. 13 at 6. On a diagram, it is noted that Petitioner started feeling right shoulder pain following an October 2018 flu shot. *Id.* The notes state "Oct 2nd, 2018 flu shot was done by an intern too high on deltoid…. nothing has relieved it." *Id.*

On January 29, 2020, Petitioner visited Columbia Orthopaedic Group. The record notes that Petitioner's symptoms of right shoulder pain "have been present for 27 months. Onset date: October 2017.[3] Prior testing: X-rays. Patient states she had flu shot [in] 2018 [in her] right shoulder and has decreased ROM with pain at night." Ex. 9 at 6. Dr. Kurt Bowman noted that "She may have had her influenza injection into her subacromial space which definitely can cause ongoing pain and inflammation." *Id.* at 8.

On February 7, 2020, Petitioner visited Blessing Hospital Radiology for an MRI of her right shoulder. Under reason for study, the records note "Decreased range of motion and pain of the right shoulder since having a flu shot in October." Ex. 9 at 33. The record then notes, "Duration: October 2018." *Id.* The MRI found a "full-thickness tear of the insertion of the supraspinatus", "Mild tendinosis far anterior infraspinatus", "mild chondrosis inferomedial humeral head", "mild osteoarthritis AC joint," and "mild joint effusion." *Id.*

On May 26, 2020, Petitioner visited Exceed Physical Therapy following right shoulder surgery on May 8, 2020. Ex. 10 at 7. Under patient history, therapist Leslie Winters wrote, "Pt had a flu shot 2 years ago and was given the shot too high in joint." *Id.*

### III. Petitioner's Affidavits that Pertain to the Issue of Onset

#### A. Petitioner's First Affidavit

Petitioner filed an affidavit on August 8, 2019. Ex. 2; ECF No. 6. Petitioner stated that she went to the Clark County Health Department on October 2, 2018 to get her annual flu vaccine. *Id.* at 2. The Health Department was staffed with nurses and interns that day; an intern administered her flu vaccine. *Id.* Petitioner averred that the vaccine was administered higher than normal into her right shoulder. *Id.* She immediately felt sharp pains in her shoulder. *Id.*

Over the next several days, the pain in Petitioner's shoulder did not improve. She described "excruciating and consistent pain in my arm starting from the top of my shoulder to about five inches below the top of my shoulder on my arm." Ex. 2 at 3. Petitioner stated that in the following month or two, she attempted to paint her kitchen cabinets, but could not withstand the shoulder pain for more than a few hours. *Id.*

Petitioner stated that she decided to seek medical attention for her shoulder pain on December 12, 2018. Ex. 2 at 3. She first met with Dr. Cormier at Kahoka Medical Clinic. During this visit, she explained to Dr. Cormier that she had "received an influenza vaccine in [her] right shoulder and that [she] ha[s] had pain in the shoulder ever since." *Id.* According to Petitioner, Dr.

---

[3] This reference to 2017 appears to be a transcription error as 27 months before January 2020 is October 2018.

4

Cormier had never heard that a vaccine could cause a shoulder injury. *Id.* Dr. Cormier recommended that Petitioner visit her chiropractor. *Id.*

Petitioner stated that she then visited a chiropractor at the Kirchner Clinic on the same date. Ex. 2 at 3. Petitioner described this visit as follows:

> I explained that I had shoulder pain from a flu shot, and that the pain was getting worse after I tried to paint my kitchen. My chiropractor seemed to think that the cause of my pain was from painting despite my detailed explanation that the pain began on October 2, 2018 and was exacerbated by my attempts to perform chores and maintenance around the house, such as painting.

*Id.* at. 3.

### B. Petitioner's Second Affidavit

Petitioner filed her second affidavit on November 12, 2019. Ex. 7; ECF No. 10. Petitioner provided some additional details in this document that were not included in exhibit 2. Petitioner described painting the cabinets in her kitchen. She stated, "I never fell, tripped or had any accident that involved any injury to my shoulder." Ex. 7 at 2. The only thing she noticed while painting was that she had increased pain in her right shoulder that she considered to be abnormal. *Id.*

With respect to the Kircher Clinic records, Petitioner stated as follows: "I have reviewed the medical records from Kirchner Clinic and can confirm that I never explained that my shoulder injury was from any fall in my kitchen and I definitely did not "wrench" my arm or shoulder." Ex. 7 at 3.

### C. Petitioner's Third Affidavit

On August 2, 2021, Petitioner filed a third affidavit addressing why she did not mention arm pain at either her October 31, 2018, or November 13, 2018 doctor's visits. Ex. 19; ECF No. 31. Petitioner stated that on October 31, 2018, she had an appointment at her primary care physician's office "for the sole purpose of obtaining a prescription for diet pills." *Id.* at 2. Petitioner noted that "at that time, I was still hopeful that my shoulder had some customary postvaccination soreness and pain that would eventually resolve." *Id.* Petitioner stated that she saw the doctor only very briefly and the visit lasted only a matter of minutes. *Id.*

Petitioner further stated that on November 13, 2018, she returned to her primary care provider because she was sick and wanted to renew her diet pill prescription. Ex. 19 at 3. Petitioner stated that she did not discuss her ongoing shoulder pain at this visit as she was more focused on her sinusitis because she feared passing on her illness to her mother; furthermore, at this time, she was still hoping her shoulder pain would resolve on its own. *Id.* Petitioner stated that, like the October 31, 2018 visit, this visit also lasted only 10-15 minutes. *Id.*

5

Finally, Petitioner stated that it was not until early December that she realized that shoulder pain from the flu shot could be permanent, and as a result, she made an appointment with her primary care provider to discuss her shoulder pain. Ex. 19 at 3.

## IV.    Legal Standards Regarding Fact Finding

Petitioner bears the burden of establishing her claim by a preponderance of the evidence. 42 U.S.C. § 300aa-13(1)(a). A petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

In order to make a determination concerning factual issues, such as the timing of onset of petitioner's alleged injury, the special master should first look to the medical records. "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2006 WL 3734216, at *8 (Fed. Cl. Spec. Mstr. Nov. 29, 2006). Medical records created contemporaneously with the events they describe are presumed to be accurate and complete. *Doe/70 v. Sec'y of Health & Hum. Servs.,* 95 Fed. Cl. 598, 608 (2010)

Contemporaneous medical records generally merit greater evidentiary weight than oral testimony; this is particularly true where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy v. Sec'y of Health & Hum. Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992)(citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1947) ("It has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight")).

However, there are situations in which compelling oral testimony may be more persuasive than written records--for instance in cases where records are found to be incomplete or inaccurate. *Campbell*, 69 Fed. Cl. at 779 ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475, at *19 ("Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733).

When witness testimony is used to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2013 WL 1880825 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him;

6

(3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). A special master making a determination whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at a hearing must have evidence suggesting the decision was a rational determination. *Burns by Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993).

### V.     Findings of Fact

Petitioner has the burden of demonstrating the facts necessary for entitlement to an award by a preponderance of the evidence. § 300aa-12(a)(1)(A). Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring).

The question to be resolved is when Petitioner's initial right shoulder pain began. After reviewing the medical records and affidavits presented in this case, and after careful examination of the record as a whole, I find there is preponderant evidence that the onset of Petitioner's symptoms of right shoulder pain began on the day of vaccination.

Petitioner's affidavit indicates that she felt a "sharp pain" immediately upon receipt of the vaccine. Ex. 2 at 2. In addition to this, eight separate medical records substantiate this claim, and specifically note that Petitioner's pain began after her flu shot. Ex. 3 at 14; Ex. 3 at 11; Ex. 5 at 31; Ex. 12 at 8; Ex. 13 at 6; Ex. 9 at 6; Ex. 9 at 33; Ex. 10 at 7. There are two issues that provide some support for Respondent's position: 1) Petitioner did not mention shoulder pain at her first two medical visits after her vaccination; and 2) the Kirchner Clinic chiropractic records document that Petitioner hurt her shoulder after a fall painting cabinets.

Although Petitioner did not mention her shoulder pain on October 31, 2018 or November 13, 2018, Petitioner stated that she had gone to see the doctor for completely unrelated reasons on both occasions. Ex. 19 at 2-3. In addition, Petitioner indicated her belief that her pain would "resolve on its own" over time. *Id.* Given that the November 2018 appointment was about six weeks after vaccination, I find Petitioner's explanation to be reasonable.

With respect to the second issue, two of Petitioner's medical records, both from Kirchner Clinic, state that Petitioner injured her shoulder following a fall while attempting to paint her cabinets. Ex. 4 at 3, 4. Petitioner states in her affidavits that this characterization is a mistake, as she told the chiropractor in a "detailed explanation" that her shoulder began to hurt following a flu shot. Ex. 2 at 2; Ex. 7 at 3.

I find that the December 12, 2018 and December 18, 2018 records are inconsistent with the remainder of Petitioner's medical records and the weight of the evidence points to her pain beginning the day of her vaccination. The December 12, 2018 record from Dr. Cormier is particularly persuasive, as Petitioner made the appointment with Dr. Cormier for the specific purpose of discussing her shoulder pain. Ex. 19 at 3. In addition, the remainder of Petitioner's medical records related to her shoulder consistently state that Petitioner's pain stemmed from her flu shot. *See* Ex. 3 at 11, Ex. 5 at 31, Ex. 12 at 8, Ex. 9 at 6, Ex. 13 at 6, Ex. 9 at 33, Ex. 10 at 7.

Further lending credence to Petitioner's recollection is the fact that on December 19, 2019, Petitioner was again seen at Kirchner clinic for her shoulder pain. Ex. 13 at 6. At this visit, the records include a notation that Petitioner's pain began following an October 2018 flu shot, and that the shot was administered too high on her shoulder. *Id.*

Finally, I note that while Petitioner was seen for shoulder pain on June 22, 2018, no evidence exists in the medical records or in Petitioner's affidavits that this injury ever bothered her again. In fact, in her first affidavit, Petitioner averred as follows: "Prior to receiving the influenza vaccine, I was healthy, active and had no orthopedic related issues in my right arm." Ex. 2 at 1. Further, Petitioner's onset of pain directly following her flu vaccine was described as "immediate" and "sharp." Ex. 2 at 2, Ex. 12 at 8. While I have considered Petitioner's pain documented in her June 2018 medical records, I do not find there is preponderant evidence that this pain continued through the date of vaccination.

### VI.     Conclusion

In short, I find the eight medical records which indicate Petitioner's pain began after her flu shot to be more persuasive than the two records from Petitioner's chiropractor. I find that Petitioner's contemporaneous medical records and her affidavits work in concert to preponderantly establish that she began to experience right shoulder pain on October 2, 2018, the day of vaccination.

The following is therefore ORDERED:

By **March 24, 2022**, Respondent shall file an Amended Rule 4 Report based on the facts articulated in this ruling.

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master
